**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MICHAEL INSCO,

                Plaintiff,

v.                               CIVIL ACTION NO.  2:19-cv-00612

WEXFORD HEALTH SOURCES, INC.;
PAM MOORE and JOHN/JANE DOE,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to dismiss by Defendants Wexford Health Sources, Inc. ("Wexford") and Pam Moore ("Moore").  (ECF No. 10.)  For the reasons discussed below, the motion, (ECF No. 10), is **GRANTED IN PART** and **DENIED IN PART.**

*I.     BACKGROUND*

Plaintiff Michael Insco ("Plaintiff") initiated this action under 42 U.S.C. § 1983 against Defendants Wexford, Moore, and unidentified John/Jane Doe Wexford employees (collectively, "Defendants").  Plaintiff is an inmate in the custody of the West Virginia Division of Corrections and Rehabilitation ("WVDOC") and is presently incarcerated at St. Mary's Correctional Center in St. Mary's, Pleasant County, West Virginia.  (ECF No. 8 at 3 ¶ 4.)  The Amended Complaint alleges that Plaintiff has repeatedly sought to receive treatment for his chronic Hepatitis C with Direct-Acting Antiviral ("DAA") drugs through WVDOC's institutional health care provider,

Wexford.  (*Id.* at 3 ¶¶ 5–6.) Plaintiff contends that Defendants have refused to treat Plaintiff with DAA drugs "as requested", (*id.* at 4 ¶ 7), because "he was not sick enough to warrant treatment," (*id.* at 6 ¶ 17).  Specifically, the Amended Complaint alleges that on May 15, 2019, Plaintiff was taken to the medical unit and seen by Moore for his liver pain.  (*Id.* at 4 ¶ 6.) Plaintiff claims that Moore told him to "stop submitting sick calls" and made other inappropriate comments in the presence of correctional staff.  (*Id.*)

On the same day, Plaintiff filed a grievance to the unit manager.  (*Id.* at 4 ¶ 6; ECF No. 9 at 1–2 (Inmate Grievance).)  Plaintiff's grievance was denied on May 17, 2019, on the basis that Plaintiff was "not being denied treatment for any issue."  (ECF No. 9 at 3.)  The unit manager attached Moore's medical report, which stated that Plaintiff was "very adamant" about being given [H]arvoni."  (*Id.*)  The report went on to state that Moore "[a]ttempted to educate [Plaintiff] on the procedure for surveillance of the virus" but was "[u]nable to get [Plaintiff] to understand or complete any education on the subject."  (*Id.*)  Plaintiff subsequently appealed the denial of the grievance to the warden and ultimately the commissioner of the WVDOC.  (*Id.* at 1.)  On June 3, 2019, Plaintiff received his grievance back from the commissioner's office denying all relief.  (*Id.*)

Plaintiff's Amended Complaint asserts three claims for deliberate indifference under 42 U.S.C. § 1983 in violation of the Eighth Amendment, intentional/reckless infliction of emotional distress under West Virginia state law, and injunctive relief that directs Wexford to provide Plaintiff with available and necessary treatment for Hepatitis C and to implement policies regarding such treatment.  (ECF No. 8.)  Plaintiff claims Defendants' conduct is based on Wexford's "corporate policy and practice to refuse the use of DAAs unless the inmate is critically ill."  (*Id.* at 6 ¶ 17.)  Further, he asserts that this "watch and wait approach . . . is not the medically

accepted standard," (*id.* at 6 ¶ 16), and that this policy "arises from the desire to cut costs and expenses regarding the treatment of inmates," (*id.* at 6 ¶ 17).  Plaintiff also contends that Wexford has failed to include his complaints of pain in his medical record "in an intentional attempt to minimize his symptoms and the seriousness of his condition." (*Id.* at 4 ¶ 6.)  He alleges that he suffered physical and mental pain and is currently experiencing "excruciating pain" near his liver. (*Id.*)  On December 16, 2019, Defendants filed the pending motion to dismiss.  (ECF No. 10.)  Plaintiff filed a timely response, (ECF No. 15), and Defendants timely replied, (ECF No. 18).  As such, the motion is fully briefed and ripe for adjudication.

## II.    *LEGAL STANDARD*

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"  *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  Well-pleaded factual allegations are required;

3

labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ms. King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III.    DISCUSSION

In their motion to dismiss, Defendants challenge the merits of Plaintiff's claims and assert qualified immunity on behalf of Defendant Moore. Each argument is addressed below.

### A. Section 1983 – Defendant Moore

Defendants assert that Defendant Moore is immune from liability under the doctrine of qualified immunity[1] because there is no clearly established right to be treated with DAA drugs for

---

[1] The pleading only refers to "defendants" generally and does not directly state whether Moore is being sued in her individual or official capacity. (*See* ECF No. 8 at 5–8.) However, a plaintiff need not expressly plead the capacity in which he or she is suing a defendant in order to state a cause of action under § 1983. To determine the nature of a §

Hepatitis C. (ECF No. 11 at 4–6.) "The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Determining whether a governmental official is entitled to qualified immunity involves a two-part inquiry: (1) whether the facts alleged or shown demonstrate that a depravation of a constitutional right has occurred; and (2) whether that right was clearly established at the time of the alleged violation. *See Pearson*, 555 U.S. at 232; *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

"A law is clearly established if 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In that regard, the standard does not require "a prior case be identical to the case at bar for fair notice to be provided." *Id.* at 216. Rather, a law is clearly established "so long as 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Id.* (internal citation omitted). Put simply, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (internal quotation marks omitted); *see also Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015).

The government official bears the burden of proof and persuasion when asserting a qualified immunity defense. *See Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003). Additionally,

---

1983 suit, the Court looks to "the substance of the plaintiff's claim, the relief sought, and the course of proceedings." *Biggs v. Meadows*, 66 F.3d 56, 59 (4th Cir. 1995). Here, Count I states that "Defendants, *while acting under the color of state law*, violated Plaintiff's constitutional rights." (ECF No. 8 at 5 ¶ 16 (emphasis added).) Thus, the Court construes this claim as one against Moore in her individual capacity.

"[t]he Supreme Court has observed that the outcome of the 'clearly established' test depends largely upon the level of generality at which the relevant legal rule is to be identified." *Smith v. Gilchrist*, 749 F.3d 302, 308 (4th Cir. 2014) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). Therefore, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Id.* Here, Plaintiff disagrees with Defendants' definition of the right allegedly violated. While Defendants identify Plaintiff's claim as a disagreement over his course of treatment, Plaintiff contends that "he is in fact receiving no drug or treatment" at all. (ECF No. 15 at 6.) Thus, as a preliminary matter, the Court must determine the appropriate level of specificity to define the right allegedly violated.

### 1.  *The Right Allegedly Violated*

As explained above, qualified immunity can be overcome only by clearly established law governing the specific facts at hand. *See Mullenix v. Luna*, 136 S. Ct. 305, 308–09, 193 L.Ed.2d 255 (2015). The Supreme Court has repeatedly stressed "that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018) (internal quotation marks and citation omitted). In *Wesby*, the Supreme Court reemphasized that "[a] rule is too general if the unlawfulness of the [defendant]'s conduct does not follow immediately from the conclusion that [the rule] was firmly established." *Id.* Here, Plaintiff frames the qualified immunity question in broad terms, asking whether it is clearly established that denying treatment for a serious medical condition violates the Eighth Amendment. (*See* ECF No. 15 at 6.) However, this formulation—which is essentially a highly conceptualized version of the deliberate indifference standard—is the type of "broad

general proposition" that cannot overcome qualified immunity. *See Mullenix*, 136 S. Ct. at 308.

Rather, the proper inquiry is whether then-existing caselaw clearly established a constitutional right to Hepatitis C treatment with DAA drugs. This specificity ensures that the right was "sufficiently clear" so that "every reasonable official would have understood that what he is doing violates that right." *West*, 771 F.3d at 213. In this fact-intensive area of constitutional law, a broader formulation would violate the Supreme Court's instruction that the specific contours of the right must be "sufficiently definite that any reasonable official . . . would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014).

Plaintiff's assertion that he is receiving no medical treatment or care is in direct conflict with his own allegations. First, Plaintiff admits that Moore examined him in the medical unit after he submitted medical service requests. (ECF No. 8 at 4 ¶ 6.) Although Plaintiff was not prescribed medication, Moore's medical chart reflects that she discussed with Plaintiff the procedure for Hepatitis C surveillance at this time. (ECF No. 9 at 3.) *See Phelps v. Wexford Health Sources, Inc.*, No. ELH-16-2675, 2017 WL 528424, at *9 (D. Md. Feb. 8, 2017) (collecting cases standing for the proposition that "[Hepatitis C] does not require [medicinal] treatment in all cases"); *see also Edmonds v. Robbins*, 67 F. App'x 872, 873 (6th Cir. 2003) ("[T]he medical literature which [plaintiff] filed with the court also establishes that medication is not always required for the treatment of hepatitis C."). Plaintiff also acknowledges that Wexford's "watch and wait approach" is a medical standard, albeit outdated. (ECF No. 8 at 6 ¶ 16.)

Additionally, many of Plaintiff's arguments clearly state that Defendants' refusal to treat him with DAA drugs violated his constitutional rights. For example, the Amended Complaint alleges that "[t]he refusal to treat plaintiff *with DAA's* demonstrates deliberate indifference to a

serious risk of harm to plaintiff by virtue of their ongoing refusal to provide treatment *as requested* . . . ." (*Id.* at 4 ¶ 7 (emphasis added).)  The Amended Complaint also states that "Defendants have repeatedly violated Plaintiff's constitutional rights . . . [by] failing to treat plaintiff *with any number of DAAs*." (*Id.* at 7 ¶ 19 (emphasis added).)  In fact, directly following the assertion that he is not receiving any treatment, Plaintiff states in his response brief that "depriving plaintiff of [DAA drugs] is deliberate indifference to [his] serious medical condition." (ECF No. 15 at 6.)

This is compounded by the fact that the lion's share of Plaintiff's Amended Complaint and Memorandum in Opposition to Defendant's Motion to Dismiss are spent discussing the medical benefits of DAAs.  In particular, Plaintiff provided five pages of decisions from federal and state courts that have recognized that the failure to treat inmates with DAA drugs can state a plausible Eighth Amendment claim.  (*Id.* at 7–11.)  Thus, despite his contention otherwise, it is apparent that Plaintiff's deliberate indifference claim is based on the denial of DAA drug treatment.

### 2. Qualified Immunity

Now that the right allegedly violated has been appropriately defined, the Court considers whether Moore is entitled to qualified immunity.  The Court may address either prong of the qualified immunity analysis discussed above first.  *See Pearson*, 555 U.S. at 242.  In this case, the Court will consider the second prong first because Defendants assert that there is no clearly established right to DAA drug treatment for Hepatitis C.  (*See* ECF No. 11 at 4–6.)

In determining whether the law was clearly established at the time of the claimed violation, the Court "ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).  Thus, "in gray areas, where the law is unsettled or

murky, qualified immunity affords protection to a government official who takes an action that is not clearly forbidden–even if the action is later deemed wrongful." *Gilchrist*, 749 F.3d at 307.

In the present case, the "crucial question" is whether the Defendants acted reasonably in the "particular circumstances," i.e., refusing to treat Plaintiff's Hepatitis C with DAA drugs. *See Plumhoff*, 572 U.S. at 779. This Court recently considered the "particular circumstances" faced by Defendants here in *Redden v. Ballard*, No. 2:17-cv-01549, 2018 WL 4327288 (S.D. W. Va. July 17, 2018) (Report and Recommendation), *proposed findings and recommendation adopted*, 2018 WL 4323921 (S.D. W. Va. Sept. 10, 2018), *aff'd*, 748 F. App'x 545 (4th Cir. 2019). There, the Court held that Wexford was entitled to qualified immunity for monetary damages arising out of a claim for failure to treat the plaintiff with DAAs for Hepatitis C.[2] *Id.* at *8. Although this holding was adopted and affirmed because no timely objections were filed, the Fourth Circuit could have reversed for plain error[3] if the court had wanted to establish a right to DAA drugs in light of recent medical advancements. Nonetheless, as the appellate court declined to do so, the magistrate judge's findings are still applicable.

In *Redden*, the magistrate judge found *Cunningham v. Sessions*, No. 9:16-cv-1292, 2017 WL 2377838 (D.S.C. May 31, 2017) to be particularly instructive. In *Cunningham*, the plaintiff was an inmate, who sought and was denied treatment for Hepatitis C with the new generation of DAA drugs. *Id.* at *1. Consequently, the plaintiff filed a complaint alleging that the defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment and

---

[2] The Northern District of West Virginia came to the same determination in an identical case. *See Taylor v. Wexford Health Sources Inc.*, No. 5:17-cv-173, 2018 WL 4761621 (N.D. W. Va. July 30, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4102818 (N.D. W. Va. Aug. 28, 2018).

[3] The Supreme Court has defined plain error as: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity or public reputation of the judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732–37 (1993). Clearly, failing to recognize a constitutional right would satisfy these elements.

sought declaratory and injunctive relief, as well as monetary damages. *Id.* at *2. Although the court concluded that the refusal to provide curative therapy for Hepatitis C could plausibly state a claim under the Eighth Amendment, the defendants were granted qualified immunity based on the "rapidly evolving legal and medical developments and the absence of any controlling Fourth Circuit or Supreme Court authority." *Id.* at *4.

This Court finds that the reasoning set forth in *Cunningham* and *Redden* is convincing and applicable here. For a constitutional right to be clearly established, its contours must be sufficient such that "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Raub*, 785 F.3d at 882. In light of medical developments and the lack of legal authority establishing that the unlawfulness of Defendants' course of action in this case is apparent, Moore would not have been on notice of a "clearly established" right of Plaintiff to be treated with DAA drugs. Thus, Moore is entitled to qualified immunity. Accordingly, the Court **GRANTS** Defendants' motion to the extent it seeks qualified immunity with respect to Defendant Moore.

### B.  Section 1983 – Wexford

Defendants also contend that Wexford is entitled to dismissal from Plaintiff's 1983 claim because (1) no official policy or custom has violated any of Plaintiff's rights under the Eighth Amendment, and (2) Plaintiff has failed to state a claim because the allegations are nothing more than a disagreement in regard to the course of treatment for Plaintiff's Hepatitis C. (ECF No. 11 at 6–9.)

Section 1983 is not itself the source of any substantive rights. Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). In order

to prevail on a § 1983 claim, a plaintiff must show "that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); 42 U.S.C. § 1983. However, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *see also Rowe v. PrimeCare Med. of W. Va., Inc.*, 3:04-cv-1264, 2009 WL 3063429, at *2 (S.D. W. Va. Sept. 21, 2009).

Here, Defendants assert that Plaintiff's 1983 claim must be dismissed because there is no official policy or custom that has violated Plaintiff's rights under the Eighth Amendment. Specifically, Defendants claim that "there is no right under the Eighth Amendment of the United States Constitution to be prescribed DAA drugs such as Havroni." (ECF No. 11 at 7.) Nonetheless, Plaintiff alleges that Wexford, "through deliberate indifference to his safety, wellbeing, and personal needs," has developed and maintained an unconstitutional policy that denies him adequate medical treatment. (ECF No. 8 at 5–6 ¶¶ 16–17.) It is well-established that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citations omitted). Thus, Defendants' first argument has no merit.

Next, Defendants argue that Plaintiff has failed to state a claim for deliberate indifference because the allegations are nothing more than a disagreement in regard to the course of treatment for Plaintiff's Hepatitis C. (ECF No. 11 at 7.) Plaintiff counters that he has adequately pled a claim for deliberate indifference because Wexford had specific knowledge of his serious medical condition and failed to provide adequate treatment. (ECF No. 15 at 6.)

11

An Eighth Amendment claim based on deliberate indifference to serious medical needs has two prongs, one objective and one subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). "Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). The subjective prong goes to culpability, and in "prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).

To establish a constitutional violation, a prisoner must establish that, "a [prison official], subjectively aware of the need and of its seriousness, nevertheless acted with 'deliberate indifference' to it by declining to secure available medical attention." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995) (citation omitted). Deliberate indifference is a "higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. What is required is both awareness and disregard of an "excessive risk" to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Whether a given prison official exhibits deliberate indifference is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842; *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) (noting that a claim of

deliberate indifference "implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice").   Where the evidence demonstrates that an official "merely refused to verify 'underlying facts that he strongly suspected to be true,' which, if verified, would have compelled him to realize that the claimant needed immediate medical attention, or that he 'declined to confirm inferences of risk that he strongly suspected to exist,'" that official can be held liable notwithstanding his actual ignorance of the medical need at issue.  *See id.* (quoting *Farmer*, 511 U.S. at 843 n.8).

Under this standard, courts have emphasized that "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."   *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *see also Jackson*, 775 F.3d at 178.  At the same time, however, a prisoner need not be subjected to a total failure of medical treatment to state a claim, and the fact that he received some treatment does not by itself doom an Eighth Amendment claim.  *See De'Lonta*, 708 F.3d at 526 (rejecting argument that the provision of some treatment for the serious medical need at issue "necessarily" rendered the plaintiff's claim of deliberate indifference legally insufficient and stating that "just because [defendant officials] have provided [the plaintiff] with some treatment . . . it does not follow that they have necessarily provided her with constitutionally adequate treatment"); *Jehovah v. Clarke*, 798 F.3d 169, 181 (4th Cir. 2015) (finding a § 1915A dismissal improper, even where the plaintiff received "extensive" treatment from the doctor defendants, where the treatment provided was nonetheless "consistent with the [plaintiff's] allegation that his doctors ignored and failed to treat many of his symptoms"); *Scott v. Clarke*, 64 F. Supp. 3d 813, 839 (W.D. Va. 2014) (finding a prison's "failure to require or

undertake corrective action and its 'hands-off' attitude towards its medical care contractors," resulting in sub-standard medical care, sufficient to allow finding of deliberate indifference).

Ultimately, "[a] constitutional violation is . . . established when government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." *Lynch v. Wexford Health Sources*, No. 2:13-cv-01470, 2016 WL 2944688, at *7 (S.D. W. Va. May 20, 2016) (internal citations omitted).  At this stage in the litigation, Plaintiff has made sufficient factual allegations to raise his right to relief above the speculative level and state a claim for deliberate indifference to serious medical needs.  As to the objective prong of the analysis, Plaintiff specifically alleges that he has been diagnosed with chronic Hepatitis C, "a serious liver disease, which if left untreated, can be terminal.  (ECF No. 8 at 3 ¶ 4.)  To this point, Defendants do not disagree.  (*See* ECF No. 18 at 1.)

With respect to the second prong, regarding the deliberate indifference of Wexford officials towards Plaintiff's serious medical needs, Plaintiff has similarly set forth sufficient factual allegations to state an Eighth Amendment claim.  Plaintiff alleges that Wexford's policy of refusing to treat Hepatitis C with drugs that are known to provide a cure has caused him to experience "excruciating pain in the area of his liver."  (ECF No. 8 at 4 ¶ 6.)  Additionally, Plaintiff alleges that Wexford refused to follow guidelines from  medical experts with the American Association for the Study of Liver Disease and the Infectious Disease Society of America, which recommend administering DAA drugs to all patients with chronic Hepatitis C infection.  (*Id.* at 3 ¶ 5.)  According to the Amended Complaint, this standard of care has also been accepted by the

Centers for Disease Control and Prevention.  (*Id.*)  Further Plaintiff alleged that he was told that "if [he] w[as] in the free world, [his] MD would refer [him] to a hepatologist."  (ECF No. 9 at 1.) Thus, Plaintiff alleges that Wexford had "no valid medical reason" to deny him DAAs other than to avoid "incur[ring] the cost of said treatment."  (*Id.* at 5 ¶ 16.)

Defendants argue that this is merely a "disagreement with medical personnel regarding the proper course of treatment," and that Plaintiff is "essentially seeking a ruling that any and all diagnosed Hepatitis C patients are constitutionally entitled to select the timeline and manner of their treatment."  (ECF No. 18 at 3).  The Court disagrees.  Such allegations raise an inference that the *necessary* medical treatment was not provided.  To this, Defendants counter that not all cases of Hepatitis C require treatment and cite caselaw to support.  (ECF No. 18 at 2–3.)  However, these cases are easily distinguishable.

First, some cases Defendants cite involved inmates who were disqualified from receiving treatment based on medical reasons.  *See, e.g.*, *Johnson v. Wright*, 412 F.3d 398, 400 (2nd Cir. 2005) (describing policy that recommended denying treatment with particular drugs if substance abuse existed); *Phelps*, 2017 WL 528424, at *2 ("due to potential side effects of HCV antiviral treatment, an inmate will not be considered for antiviral therapy if he or she is asymptomatic and demonstrates an undetectable viral load.").  Second, some cases involved inmates whose Hepatitis C was not advanced enough to receive treatment.  *See, e.g.*, *Iseley v. Dragovich*, 90 F. App'x 577, 581 (3rd Cir. 2004) (noting that the inmate did not dispute that his condition had not yet progressed to point where such treatment would have been appropriate); *Phelps*, 2017 WL 528424, at *1 (noting that the inmate was asymptomatic with an undetectable viral load).  Third, almost all the cases noted that the inmate was at least being monitored regularly.  *See, e.g., id.*

15

Whereas, in this case, Plaintiff has alleged that he has chronic Hepatitis C and the medical treatment he received amounted to "no treatment." (ECF No. 15 at 6.) In fact, rather than being regularly monitored, Plaintiff alleges that he was told to "stop submitting sick calls." (ECF No. 8 at 4 ¶ 6.) The result, according to Plaintiff's allegations, ultimately left him in "excruciating pain." (*Id.*) Thus, if true, Wexford's policy would demonstrate deliberate indifference towards Plaintiff's Hepatitis C. *See McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by . . . providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness."); *De'lonta*, 708 F.3d at 525. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's deliberate indifference claim for failure to state a claim.

### C. Failure to Exhaust Administrative Remedies

As a state prisoner, Plaintiff is bound by the mandatory requirements of the Prison Litigation Reform Act ("PLRA"), which prohibits incarcerated individuals from the commencement of a civil action regarding prison conditions and mistreatment without first exhausting all available administrative remedies. *See* 42 U.S.C. 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The Supreme Court has explicitly held "that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Block*, 549 U.S. 199, 216 (2007). However, a prisoner's complaint may be dismissed in the "rare case" where the prisoner's failure

16

to exhaust is apparent from the face of the complaint.  *Wilcox v. Brown*, 877 F.3d 161, 167 (4th Cir. 2017) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005)).

Similarly, the West Virginia Prisoner Litigation Reform Act ("WV PLRA") requires an inmate to exhaust the agency's procedures before filing a civil action involving an ordinary administrative remedy.  *See* W. Va. Code § 25-1A-2(c).  An "ordinary administrative remedy" is defined as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong."  W. Va. Code § 25-1A-2(a).  The WV PLRA provides:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

Claims that have not been administratively exhausted may be dismissed under the standard of Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.*, *Baker v. Hammons*, No. 2:15-cv-13849, 2016 WL 538481, at *2–3 (S.D. W. Va. Feb. 9, 2016) (granting defendant's motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2).  Additionally, where "a prisoner's complaint contains a mix of exhausted and unexhausted claims, the Court may not consider the unexhausted claims."  *Stohl v. E. Reg'l Jail*, No. 1:14-cv-109, 2015 WL 5304135, at *4 (N.D. W. Va. Sept. 8, 2015) (citing *Jones*, 549 U.S. at 220–21).

Here, Defendants argue that Plaintiff has failed to exhaust his administrative remedies for alleged treatment that occurred before May 1, 2019.  (ECF No. 11 at 12.)  Defendants explain that,

17

"[w]hile the Amended Complaint makes specific reference only to a single incident," it nonetheless alleges that Plaintiff's particular requested Hepatitis C treatment was "denied [] on a number of occasions." (*Id.*) Plaintiff's May 15, 2019 grievance is the only grievance referenced in Plaintiff's Amended Complaint. Thus, Defendants argue that Plaintiff has failed to exhaust his administrative remedies "for alleged treatment denials which occurred before May 1, 2019," (*id.*), the length of the fifteen-day grievance period prior to his actual grievance filing. *See* W. Va. Code R. § 90-9-4.1 (providing that an inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance.").

Defendants' argument misrepresents the basis of Plaintiff's claims. Plaintiff does not challenge each instance of treatment as Defendants' suggest. Rather, he claims that Wexford maintained an unconstitutional policy or practice "to refuse the use of DAAs unless the inmate is critically ill." (ECF No. 8 at 6 ¶ 17.) In that regard, Plaintiff's May 15, 2019 grievance complained that he was "deni[ed] [] access to a hepatologist" and was told that "if [he] w[as] in the free world, [his] MD would refer [him] to a hepatologist." (ECF No. 9.) Plaintiff further alleged he was "denied medical treatment" for his Hepatitis C despite his expressed "emotional duress, pain in side, [and] loss of sleep." (*Id.* at 2.) Thus, Plaintiff sufficiently grieved the implementation and application of the Wexford policy that purportedly refused the use of DAAs unless the inmate was critically ill.

The PLRA's exhaustion requirement was designed to afford prison officials a chance to address inmate complaints internally, prior to the filing of federal litigation. *See Porter v. Nussle*, 534 U.S. 516, 517 (2002); *see also Wilcox*, 877 F.3d at 167 n.4 (explaining that a grievance alerts "the prison to the nature of the wrong for which redress is sought"). In other words, the purpose

of the grievance is to provide prison officials a "fair opportunity" to address an inmate's complaint. *See Woodford v. Nero*, 548 U.S. 81, 81 (2006); *Anderson*, 407 F.3d at 682.

Plaintiff's May 15, 2019 grievance certainly provided the institution with a "fair opportunity" to respond to Plaintiff's complaints about his medical treatment, or lack thereof. More importantly, this grievance alerted prison officials to the alleged problem in the healthcare unit and permitted prison officials (who knew that Wexford was the healthcare contractor for the prison) to examine whether Wexford's policies or practices were the cause of Plaintiff's complaints regarding his treatment. For these reasons, the Court finds that Plaintiff's May 25, 2019 grievance was sufficient to exhaust his claim against Defendants. Accordingly, Defendants' motion is **DENIED** insofar as it seeks to dismiss any portion of Plaintiff's Amended Complaint for failure to exhaust administrative remedies.

### D. Intentional/Reckless Infliction of Emotional Distress

Next, Defendants argue that Plaintiff has failed to state a claim for intentional infliction of emotional distress because the alleged conduct was not outrageous. (ECF No. 11 at 9–11.) Plaintiff's state law tort claim for the intentional infliction of emotional distress is based on the same facts giving rise to his § 1983 claim. (*See* ECF No. 8 at 7–8.) This Court will exercise its supplemental jurisdiction over this state tort claim, as it forms part of the same case or controversy as the federal claim. *See* 28 U.S.C. § 1367(a).

In West Virginia, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). The West Virginia Supreme Court of Appeals has set forth the following elements

19

necessary to establish intentional infliction of emotional distress:

> (1) That defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) That the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) That the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) That the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs.*, 504 S.E.2d 419, 425 (W. Va. 1998). This claim requires conduct that is "more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Id.* at 425 (citation omitted). In fact, "it is not enough that the defendant acted with a tortious intent" or even that "the defendant's conduct could be characterized as malicious." *Philyaw v. E. Associated Coal Corp.*, 633 S.E.2d 8, 14 (W. Va. 2006) (internal citations omitted). Rather, liability depends upon whether the conduct has been so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Keyes v. Keyes*, 392 S.E.2d 693, 696 (W. Va. 1990) (emphasis removed). Alleged "conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." *Courtney v. Courtney*, 413 S.E.2d 418, 423–24 (W. Va. 1991) (internal citations omitted).

Defendants argue that Plaintiff's allegations "cannot reasonably constitute the level of outrageous conduct necessary to satisfy the first element of the *Travis* test." (ECF No. 11 at 11.) The Court disagrees and finds that the allegations support an inference that Defendants' actions amounted to extreme and outrageous conduct or exceeded "all possible bounds of decency." *Travis*, 504 S.E.2d at 425. Plaintiff alleged that Defendants knew of his medical issue and the substantial risk of harm Hepatitis C poses. Instead of providing him treatment, Plaintiff alleges

20

that he was told to stop submitting sick calls and has suffered from pain as a result.  Taken as true, the conduct alleged here is certainly more than "merely annoying" or "uncivil."  It therefore follows that Plaintiff's claim is sufficiently pled.  Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's intentional/reckless infliction of emotional distress claim for failure to state a claim.

    *E.  Injunctive Relief*

    Finally, Defendants argue that Plaintiff's claim for injunctive relief must be dismissed as moot because "the condition which forms the basis of the Plaintiff's Complaint occurred at Northern Correctional Facility," but "[Plaintiff] is presently incarcerated at St. Mary's Correctional Center."  (ECF No. 11 at 14.)

    To be sure, under well-established Fourth Circuit precedent, the transfer or release of an inmate from the facility where he suffered the challenged conditions "moots his claims for injunctive and declaratory relief" pertaining to his imprisonment.  *Incumma v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007).  But, the Fourth Circuit has explained that this is because a plaintiff's release from prison "le[aves] [the court] without a 'case or controversy' to decide."  *United States v. Hardy*, 545 F.3d 280, 284 (4th Cir. 2008); *see also Powell v. McCormack*, 395 U.S. 486, 496 ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-come."); *see also DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam) (stating that federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them").

    Whereas, in the present case, the parties still have "a legally cognizable interest in the outcome," and this Court still has the "power to decide questions that [can] affect the rights of the

litigants." In an identical case, the Northern District of West Virginia reasoned, "the plaintiff's claims relate to Wexford," and "[b]ecause Wexford provides medical care at all WVDOC facilities," plaintiff's transfer does not make his claim moot. *Taylor v. Wexford Health Sources Inc.*, No. 5:17-cv-173, 2018 WL 4761621, at *1 n.1 (N.D. W. Va. July 30, 2018). Accordingly, for these reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claim for injunctive relief.

### *IV. CONCLUSION*

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 10.) Insofar as Defendants claim Moore is entitled to qualified immunity, the Court **GRANTS** the motion and **DISMISSES** Plaintiff's § 1983 claim with respect to Moore only. The Court **DENIES** the motion on all other grounds.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        May 28, 2020

_____

THOMAS E. JOHNSTON, CHIEF JUDGE