**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MICHAEL INSCO,

                Plaintiff,

v.                                    CIVIL ACTION NO.  2:19-cv-00612

WEXFORD HEALTH SOURCES, INC., et al.,

                Defendants.

**MEMORADUM OPINION AND ORDER**

Pending before the Court are three motions: (1) Defendant Pam Moore and Wexford Health Sources, Inc.'s Motion to Dismiss, (ECF No. 49) ("Moore and Wexford's Motion to Dismiss"); (2) Debbie Hissom's Motion to Dismiss, (ECF No. 64) ("Hissom's Motion to Dismiss"); and (3) Plaintiff's Motion for Leave to Amend Complaint to Add Defendant Wexford to Count III Requesting Injunctive Relief and Bring Action Against Debbie Hissom in her Official Capacity ("Plaintiff's Motion for Leave to Amend Complaint"), (ECF No. 72).  For the reasons stated more fully within, the Court **GRANTS** Plaintiff's Motion for Leave to Amend Complaint, (ECF No. 72) and **DENIES IN PART** and **GRANTS IN PART** Moore and Wexford's Motion to Dismiss, (ECF No. 49).  The Court **GRANTS IN PART** an **DENIES IN PART** Hissom's Motion to Dismiss.  (ECF No. 64.)

1

*I. Background*

    *A. Procedural History*

On August 21, 2019, Plaintiff Michael Insco ("Plaintiff") initiated this action against Defendants Wexford Health Sources, Inc. ("Wexford"), Pam Moore ("Moore"), and unidentified John/Jane Doe Wexford employees. (ECF No. 1.) Then, on December 2, 2019, Plaintiff filed an Amended Complaint. (ECF No. 8.) On July 15, 2020, Plaintiff's counsel filed a Motion to Stay as Plaintiff had been recently paroled—but had not yet contacted his parole officer. (ECF No. 36.) At that time, Plaintiff's counsel indicated that Plaintiff's location was unknown and asked to stay this matter for three months. *Id.* Defendants did not oppose this Motion to Stay. *Id.* The Court agreed to the stay and stayed this action through October 15, 2020. (ECF No. 37.) After the case was reopened, Plaintiff filed a Motion for Leave to Amend Complaint to Substitute or Add Party. (ECF No. 43.) In that Motion for Leave to Amend Complaint, Plaintiff sought to add Debbie Hissom as a party to the matter. *Id.* Ultimately, the Court granted the Motion for Leave to Amend Complaint, (ECF No. 47), and the Second Amended Complaint was deemed filed on December 21, 2020, (ECF No. 48).

Following the filing of the Second Amended Complaint, Defendants Moore and Wexford filed a Motion to Dismiss. (ECF No. 49.) Plaintiff responded to the Motion to Dismiss on January 19, 2021. (ECF No. 56.) On January 25, 2021, Defendants Moore and Wexford filed their Reply in support of their Motion to Dismiss. (ECF No. 57.) Defendant Debbie Hissom ("Hissom")— the defendant Plaintiff added in the Second Amended Complaint—filed her own Motion to Dismiss on April 9, 2021. (ECF No. 64.) Hissom's Motion to Dismiss was fully briefed by April 30, 2021. (ECF Nos. 64, 65, 71, 75.) During the briefing of Hissom's Motion to Dismiss, Plaintiff

2

filed a Motion for Leave to Amend Complaint.  (ECF No. 72.)  Hissom filed her Response to the Motion for Leave to Amend Complaint on May 7, 2021, (ECF No. 78), and Moore and Wexford joined that Response shortly thereafter, (ECF No. 79).  Now, all three of these motions, Wexford and Moore's Motion to Dismiss, (ECF No. 49); Plaintiff's Motion for Leave to Amend Complaint, (ECF No. 64); and Hissom's Motion to Dismiss, (ECF No. 72), are ripe for adjudication.

### B.   Factual Background and Allegations

This case stems from allegations related to the sufficiency of medical and drug treatment provided to Plaintiff by Defendants for Plaintiff's Hepatitis C diagnosis. Generally, Plaintiff alleges that, at various West Virginia Correctional facilities, Wexford and its employees "have been deliberately indifferent to the serious medical conditions of [Plaintiff] by repeatedly refusing to provide [him] treatment for [his] hepatitis C."  (ECF No. 48 at 1.)  Plaintiff contends that the Wexford policy that contains the treatment regimen for inmates with Hepatitis C rises to the level of deliberate indifference to his serious medical condition.  (ECF No. 48 at pp. 1-2.)  Plaintiff further claims that the standard of care for the successful treatment of individuals with Hepatitis C involves medications known as Direct Acting Antiviral drugs ("DAAs") and that Defendants' refusal to provide DAAs to Plaintiff amounts to a violation of the Eighth Amendment. (*See* ECF No. 48 at ¶ 6.)

More specifically, Plaintiff's Second Amended Complaint asserts claims against three named defendants and John/Jane Does. (ECF No. 48.)  The named defendants are Wexford, "a company that provides health services to inmates at various West Virginia Correctional facilities[;]" Moore, "a nurse practitioner employed by Wexford who has personally addressed plaintiff's request for antiviral drug treatment[;]" and Hissom, "who is employed by the [West

3

Virginia Division of Corrections and Rehabilitation] as the Director of Medical Services." (ECF No. 48 at pp. 2-3.) The Second Amended Complaint contains three causes of action. (ECF No. 48.) The first two causes of action are deliberate indifference under 42 U.S.C. § 1983 in violation of the Eighth Amendment and intentional/reckless infliction of emotional distress under West Virginia state law. (ECF No. 48.) The third cause of action seeks injunctive relief (1) that directs Hissom "to alter the policy that results in contracted medical providers from treating plaintiff or referring plaintiff for treatment of his hepatitis C;" (2) that directs "providers to make medical referrals for treatment of Hepatitis C on medical grounds and, not financial grounds;" and (3) that directs "providers to develop and implement policies to preclude such violations from occurring in the future." (ECF No. 48 at p. 9.)

Now Defendants Wexford, Moore, and Hissom move to dismiss this Second Amended Complaint, (ECF Nos. 49, 64), and Plaintiff seeks leave to amend his Second Amended Complaint, (ECF No. 72.) Each of these three pending motions will be discussed in turn below.

## II.    Legal Standard

As the Court is addressing two separate types of motions in this Order, each legal standard will be provided in separate subsections below.

### A.  Motion to Amend

When a plaintiff seeks to amend a complaint after expiration of a court's scheduling deadline with respect to amended pleadings, that plaintiff "first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995); *see* Fed. R. Civ. P. 16(b) ("A schedule may be modified only for good cause and with the

4

judge's consent."); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (following other federal courts of appeals in holding that "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend pleadings"). "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cty.*, 182 F. App'x 156, 162 (4th Cir. 2006) (per curiam) (unpublished opinion); *see also Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (per curiam) (unpublished opinion) ("'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or the party's attorney) has not acted diligently in compliance with the schedule.'" (alterations in original) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1522.2 (3d ed. 2010))); *Marcum*, 163 F.R.D. at 255 ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence.").

Once a plaintiff demonstrates good cause, then amendment should be allowed in accordance with the standard set forth by Rule 15(a), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Whereas the Rule 16(b) analysis focuses on the diligence of the moving party, the Rule 15(a) inquiry focuses "substantially on the prejudice to the opposing party if leave to amend is granted." *Marcum*, 163 F.R.D. at 254 n.8.  As this Court has previously recognized:

> In the absence of any apparent or declared reason—such as undue delay,

> bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Burton v. United States*, 199 F.R.D. 194, 199 (S.D. W. Va. 2001) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "Although the decision whether to grant leave rests within the sound discretion of the district court, the federal rules strongly favor granting leave to amend." *Medigenof Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167–68 (4th Cir. 1993) (citing *Nat'l Bank v. Pearson*, 863 F.2d 322, 327 (4th Cir. 1988)).

> B.  *Motion to Dismiss*

To defeat a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. Courts use a two-step approach to determine the sufficiency of a complaint. First, the court must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Second, the court determines whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* In applying this second step, the court only assumes the truth of the purely factual allegations. *See id.* A court need not assume the veracity of legal conclusions or theories. *See id.*

6

In other words, well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III.    Discussion

### A.  Plaintiff's Motion for Leave to Amend

Plaintiff seeks to leave to amend his Second Amended Complaint to revise his requested relief to Count III (Injunctive Relief).  (ECF No. 72.)    Plaintiff's proposed Third Amended Complaint seeks to obtain injunctive relief from Wexford *and* Hissom—not merely Hissom—and "adds or clarifies the claims against Hissom [ ] include her in her official capacity for the limited purpose of injunctive relief."  (*Compare* ECF No. 48 at ¶¶ 30-31 *and* ECF No. 72 at ¶¶ 30-31.) These are the only two proposed revisions.  Plaintiff states that he seeks to amend his Second Amended Complaint because he is now back in a WVDOC facility where Wexford is a medical provider.  (ECF No. 72 ¶ 3.)  Hissom argues that Plaintiff's Motion for Leave to Amend should be denied because (1) the amendment will cause undue delay; (2) "Plaintiff has demonstrated repeated failure to cure deficiencies by amendments previously allowed"; and (3) "Plaintiff's amendment would be futile as to the other claims asserted against Defendant Hissom."  (ECF No. 78 at pp. 2-3.)  Wexford and Moore joined Hissom's arguments against Plaintiff's Motion for Leave to Amend.  (ECF No. 79.)

Leave to amend a complaint should be freely given; however, the Court has already given Plaintiff multiple opportunities to amend his Complaint. However, Plaintiff is now seeking leave to file his Third Amended Complaint as his circumstances have changed and he is now back in custody of the WVDOC in a facility where Wexford is a medical provider. (ECF No. 72.) Due to this change in circumstance, the Court believes Plaintiff sufficiently satisfies the good cause standard of Rule 16(b). Fed. R. Civ. P. 16(b) ("A schedule may be modified only for good cause and with the judge's consent.") Plaintiff is in the custody of the WVDOC in a facility where Wexford provides services. This is a new factual development in this case that the Court believes rises to the level of good cause as it appears Plaintiff's re-incarceration occurred after the deadline to amend the complaint. Since the change in circumstance occurred after the original deadline to amend the complaint, this satisfies a showing of good cause. *See Cook*, 484 F. App'x at 815 (4th Cir. 2012) (per curiam) (unpublished opinion) ("'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or the party's attorney) has not acted diligently in compliance with the schedule.'" (alterations in original) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1522.2 (3d ed. 2010))); *Marcum*, 163 F.R.D. at 255("[T]he touchstone of 'good cause' under Rule 16(b) is diligence.").

In other words, Plaintiff's desire to file a Third Amended Complaint is not due to a lack of diligence on behalf of the Plaintiff and any potential delay due to the filing of a Third Amended Complaint will not meaningfully prejudice the Defendants in a manner that impacts their ability to perform discovery or move forward with this case. Thus, this Court exercises its discretion to

permit Plaintiff to file his Third Amended Complaint.  Accordingly, this Court **GRANTS** Plaintiff's Motion for Leave to Amend Complaint, (ECF No. 72).

### B.  Defendants Moore and Wexford's Motion to Dismiss[1]

Moore and Wexford's Motion to Dismiss seeks to dismiss Plaintiff's Second Amended Complaint, which Moore and Wexford argue states injunctive relief claims against Wexford and Moore; a deliberate indifference claim against Moore and Wexford; and a claim for intentional infliction of emotion distress against all defendants.  (ECF No. 50.)  Moore and Wexford contend that Plaintiff's claim for injunctive relief is moot because, at the time of the filing of their Motion to Dismiss, Plaintiff was housed in the Western Regional Jail—a facility where Moore and Wexford claim to have no medical authority.  (ECF No. 50 at pp. 4-5.)  As to the deliberate indifference claim alleged against Moore, Moore argues that the claim must be dismissed pursuant to the doctrine of res judicata as the Court held in a prior order that Moore was entitled to qualified immunity.  (ECF No. 50 at p. 5.)  Wexford contends Plaintiff's deliberate indifference claim against it must be dismissed as Plaintiff's Complaint "alleges the policy which caused his injuries was established by WVDOC personnel" and not a policy issued by Wexford.  (ECF No. 50 at pp. 7-8.)  Finally, Moore and Wexford jointly argue that Plaintiff's claims against them for intentional infliction of emotional distress should be dismissed as Plaintiff's Second Amended Complaint fails to sufficiently state the necessary requirements for such a claim.  (ECF No. 50 at pp. 8-9.)

---

[1] Given that the Court has granted Plaintiff's Motion for Leave to Amend Complaint and the limited nature of the revisions from the Second Amended Complaint to the Third Amended Complaint, the Court's analysis and findings related to Wexford and Hissom's Motion to Dismiss are also applicable to the Third Amended Complaint—unless stated otherwise herein.

In Plaintiff's response to Moore and Wexford's Motion to Dismiss, he clarifies that he is not bringing a deliberate indifference claim against Moore and that Count III (the injunctive relief claim) is directed exclusively at Defendant Hissom.  (ECF No. 56.)  Plaintiff clarifies that the injunctive relief claim only applies to Hissom because, at the time of the filing of the Second Amended Complaint, Plaintiff was not in the care of Wexford and Moore but, rather, was being housed at Western Regional Jail, a facility where PrimeCare of West Virginia provides healthcare. (ECF No. 56.)[2]  Thus, based on Plaintiff's own clarifications, the Second Amended Complaint seeks injunctive relief from Hissom, states a deliberate indifference claim against Wexford and Hissom, and alleges an intentional infliction of emotional distress claim against all defendants. (*See* ECF No. 56.)

In part, Plaintiff argues that the deliberate indifference claim against Wexford should not be dismissed because Paragraph 18 of the Second Amended Complaint states: "Defendant Wexford has developed and established a corporate policy and practice to refuse the use of DAA's unless the inmate is critically ill."[3] (ECF No. 48.)  Plaintiff also points to his Second Amended Complaint to note that it alleges that "both Wexford and Hissom are liable for the creation and implementation of the policy in question" and, thus, "both Wexford and Hissom are the subject of plaintiff's [sic] claim for deliberate indifference."  (ECF No. 56 at p. 5.)  Plaintiff further rebuts Wexford and Moore's Motion to Dismiss by arguing that he has alleged sufficient facts to support

---

[2] Plaintiff's Third Amended Complaint seeks injunctive relief from Wexford as Plaintiff is now back in the custody of a facility where Wexford provides healthcare. The Court's findings herein are not applicable to Wexford as, at the time of the briefing of this Motion to Dismiss, there was no claim for injunctive relief alleged against Wexford.

[3] This language in paragraph 18 the Second Amended Complaint is identical to the language in paragraph 18 of the Third Amended Complaint. *Compare* ECF No. 48 *with* ECF No. 72-1.)  Thus, the analysis and conclusions stemming from this in regard to the Second Amended Complaint is also applicable to the Third Amended Complaint.

a claim for outrageous conduct as the Second Amended Complaint states that defendants intentionally ignored the danger Plaintiff faced while making comments to Plaintiff that he should stop submitting sick calls. (ECF No. 56.)

Based on the clarifications provided by Plaintiff in his response to Wexford and Moore's Motion to Dismiss, the Court will now address Wexford and Moore's Motion to Dismiss as to the deliberate indifference claim against Wexford and the intentional infliction of emotional distress claim as to all defendants.

1.  *Deliberate Indifference Violations of the Eighth Amendment Pursuant to 42 U.S.C. § 1983*

To analyze a motion to dismiss for failure to state a claim, the Court must first separate the legal conclusions in the complaint from the factual allegations. *Ashcroft*, 556 U.S. at 678. The Second Amended Complaint states, in pertinent part, "[Wexford's] conduct is part of a patter[n], practice or scheme to deny inmates, including plaintiff, treatment of hepatitis C, so as not to incur the cost of said treatment. [Wexford] know[s] that there is no valid medical reason to deny plaintiff drug intervention that will cure plaintiff. . . . Moreover, [Wexford has] [ ] knowledge that the watch and wait approach places plaintiff in imminent danger and that this approach is not the medically accepted standard and has not been for years." (ECF No. 48 ¶ 17.) The Second Amended Complaint goes on to state that "Defendant Wexford has developed and established a corporate policy and practice to refuse the use of DAA's unless the inmate is critically ill. This custom or policy is not based in medical science[.] . . . Plaintiff has also been repeatedly informed by Wexford employees that he was not sick enough to warrant treatment." (ECF No. 48 ¶ 18.)

Next, the Court must determine whether these factual allegations in Plaintiff's complaint permit "a reasonable inference that Wexford is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In the context of prisons, the Eighth Amendment to the United States Constitution is violated when a corrections official is deliberately indifferent "to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To state claim for deliberate indifference under § 1983, a plaintiff must satisfy a two-prong test and show: (1) the injury or deprivation was "objectively, 'sufficiently serious'" and (2) the official has acted with "'deliberate indifference' to inmate health or safety." *Id.* at 834. This claim under the Eighth Amendment "require[es] a showing that the official was subjectively aware of the risk" of serious harm. *Id.* at 829. "Courts often refer to these as the 'objective' and 'subjective' prongs of deliberate indifference." *See, e.g., Baxley v. Jividen*, 508 F.Supp.3d 28 (S.D.W. Va. 2020) (citing *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)).

The Court finds that, taken as true, the factual allegations in Plaintiff's Second Amended Complaint sufficiently plead a claim of deliberate indifference under the Eighth Amendment pursuant to § 1983. Plaintiff alleges that Wexford was on notice regarding Plaintiff's medical condition and have, allegedly, refused to provide him with satisfactory or sufficient medical treatment for his ongoing condition. These allegations are sufficient to overcome a Motion to Dismiss. *See DePaola v. Clarke*, 884 F.3d 481, 488 (4th Cir. 2018) (finding that allegations that defendants knew of an inmate's serious medical condition and refused to provide the inmate with treatment is sufficient for state a claim for deliberate indifference). Accordingly, Wexford and Moore's Motion to Dismiss as the deliberate indifference claim is **DENIED**.

    2. *Intentional Infliction of Emotional Distress*

The Court returns to the first step of its analysis for a motion to dismiss and separates the legal conclusions from the factual allegations specifically as to Plaintiff's claims against Wexford and Moore for intentional infliction of emotional distress.  In relevant part, the Second Amended Complaint[4] states Plaintiff "sought antiviral treatment for his Hepatitis C, through the institutional health care provider (Wexford) at each and every facility he has been housed but has been denied treatment because of the cost of that treatment."  (ECF No 48 at ¶ 5.)  Moreover, Paragraph 6 of the Second Amended Complaint alleges that "Defendants are [ ] aware that the use of these DAA's [sic] are the appropriate treatment for plaintiff's chronic hepatitis[;]" but have "refused to administer the DAA's [sic] or refer plaintiff for said treatment[.]"  (ECF No. 48 at ¶ 6.)  Plaintiff also alleges that "defendants have developed and implemented a plan for treatment that they know will prevent many inmates, including plaintiff[,] from receiving treatment."  *Id.*  Paragraph 7 of the Second Amended Complaint goes into more detail by alleging that Plaintiff "has repeatedly submitted inmate medical service requests ([s]ick calls) seeking treatment of the pain and his Hepatitis C" and that Moore told Plaintiff to stop submitting sick calls.  (ECF No. 48 at ¶ 7.)  Plaintiff further alleges that Moore made the comment "well, how did you get hep C" and exhibited an attitude of "disdain" for Plaintiff.  (ECF No. 48 at ¶ 3.)

Plaintiff further alleges that all of the above caused him great emotional and mental distress, including, but not limited to, fear, anxiety, depression, and loss of personal dignity.  *Id.* at ¶ 27.  Plaintiff also contends Defendants knew or should have known that such conduct was

---

[4] The relevant allegations to Plaintiff's claim for intentional infliction of emotional distress are identical in both the Second Amended Complaint and the Third Amended Complaint.  Thus, the analysis remains the same as to both complaints.

reasonably certain to cause [Plaintiff] severe emotional distress and did in fact cause such severe emotional distress." *Id.* at ¶ 26.

As the second prong of this analysis, the Court must determine whether the factual allegations in Plaintiff's complaint permit a reasonable inference that Defendants are liable for the misconduct alleged. *See Ashcroft*, 556 U.S. at 678. To prevail on a claim for intentional infliction of emotional distress, Plaintiff must establish four elements:

> (1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*See, e.g., Travis v. Alcon Laboratories, Inc.*, 202 W. Va. 369 (1998). The West Virginia Supreme Court of Appeals emphasizes that the conduct at issue must be so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tanner v. Rite Aid of W. Va.*, 194 W. Va. 643, 51 (1995). "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." *Courtney v. Courtney*, 186 W. Va. 597, 602 (1991).

In this case, Plaintiff fails to allege facts that show Wexford and Moore acted in an extreme or outrageous manner that would meet the standard for an intentional infliction of emotional distress claim. Wexford and Moore's alleged conduct simply does not rise to the level of behavior that is atrocious or utterly intolerable in a civilized society. Moreover, the facts—as alleged—do not show that Wexford or Moore intended to inflict emotional distress on Plaintiff or that Wexford

14

or Moore acted recklessly when it was certain that extreme emotional distress would result. Rather, Plaintiff's allegations regarding Moore's comment(s) to him merely amount to being uncivil or mean-spirited and Plaintiff's allegations against Wexford—if true—could potentially amount to negligence.  Regardless, the purely factual allegations do not rise to the outrageous level required to sustain a claim for intentional infliction of emotional distress against Moore or Wexford.

Accordingly, the Court **GRANTS** Wexford and Moore's Motion to Dismiss as to the intentional infliction of emotional distress claim asserted against Wexford and Moore and **DENIES** Wexford and Moore's Motion to Dismiss as to the deliberate indifference claim asserted against Wexford. (ECF No. 49). The Court **DENIES** Wexford and Moore's Motion to Dismiss as to the count seeking injunction relief as **MOOT**.

### C. *Defendant Hissom's Motion to Dismiss*

Hissom's Motion to Dismiss argues that Plaintiff's Second Amended Complaint must be dismissed for the following reasons: (1) Plaintiff has failed to states claims of deliberate indifference and intentional infliction of emotional distress; (2) Hissom is entitled to qualified immunity as to Count I (42 U.S.C § 1983 – deliberate indifference); and (3) "Plaintiff's claim for injunctive relief fails to state a claim upon which relief may be granted because Plaintiff has sued Hissom in her individual capacity." (ECF No. 64.)   As an initial matter, the Court notes that since it granted Plaintiff's Motion for Leave to Amend Complaint, which will result in the filing of Plaintiff's Third Amended Complaint, Hissom's argument that injunctive relief should fail because Plaintiff sued Hissom in her individual capacity is moot.  Plaintiff's Third Amended Complaint clarifies that Plaintiff is seeking injunctive relief against Hissom in her official capacity—not her

15

individual capacity.  (ECF No. 72-1.)  The remaining arguments in Hissom's Motion to Dismiss will be discussed in turn below.

      1.   *Deliberate Indifference Violations of the Eighth Amendment Pursuant to 42 U.S.C. § 1983*

Hissom argues that Plaintiff fails to state a claim for which relief can be granted and that she is entitled to qualified immunity as an affirmative defense to Plaintiff's deliberate indifference claim.  (ECF Nos. 65, 75.)  Hissom argues she "is shielded from liability for Plaintiff's deliberate indifference claim by qualified immunity because she was performing her job duties in a manner that did not violate clearly established constitutional or statutory rights of which a reasonable person would have known."  (ECF No. 65 at p. 9.)  Hissom notes that the deliberate indifference claim is based on the denial of DAA drugs treatment and argues that she "would not have been on notice of a 'clearly' established' right of Plaintiff to be treated with DAA drugs" due to the "medical developments and the lack of legal authority establishing the unlawfulness of Defendant Hissom's course of action."  (ECF No. 65 at p. 12.)

The threshold question is the applicability of qualified immunity to Hissom here, so the Court will address that first.  If the Court determines Hissom is shielded by qualified immunity in this action, then the Court's analysis need not continue.

"The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate *clearly established* constitutional or other rights that a reasonable officer would have known."  *Sims v. Labowtiz*, 885 F.3d. 254, 260 (4th Cir. 2018) (emphasis added).  The government official asserting a qualified immunity defense bears the burden of proof and persuasion. *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).  To determine

if an officer is entitled to qualified immunity, the Supreme Court endorses a two-part inquiry. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, the Court must determine whether the facts alleged or shown demonstrate that a depravation of a constitutional right has occurred. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Next, the Court examines whether the right was clearly established at the time of the alleged deprivation. *Id.* For this second prong, "[w]e do not require a case directly on point in order to conclude that the law was clearly established so long as existing precedent [has] placed the statutory or constitutional question beyond debate." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Rather, "[a] law is clearly established if 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) (quoting *Ashcroft*, 564 U.S. at 741). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (internal quotation marks omitted); *see Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015).

### a. Depravation of a Constitutional Right

In an earlier order in this case, this Court determined that the Plaintiff's deliberate indifference claim is based on the denial of DAA drug treatment to Plaintiff while Plaintiff is incarcerated. (ECF No. 33 at p. 8.) "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beron*, 896 F.2d 848, 851 (4th Cir. 1990) (overruled on other grounds). "[M]ere

17

negligence or malpractice does not violate the Eighth Amendment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather,

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.

*Id.* (internal citations omitted). Demonstrating deliberate indifference to a serious medical need is a high bar. *Redden v. Ballard*, No. 2:17-cv-01549, 2018 WL 4327288, at *6 (S.D.W. Va. July 17, 2018).

An Eighth Amendment claim based on deliberate indifference to serious medical needs has two prongs, one objective and one subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). "Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). The subjective prong goes to culpability, and in "prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).

To state a claim for deliberate indifference, a plaintiff must establish that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837(1994); *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("[D]eliberate indifference, . . . implies at

a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). Knowledge of a substantial risk of danger may be inferred "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842–43; *see also Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] did know of it because he could not have failed to know of it.").

In the present case, Plaintiff's allegations for deliberate indifference are based on Defendants' alleged failures to sufficiently treat Plaintiff's Hepatitis C by refusing to provide Plaintiff with DAA drug treatment.  (*See* ECF No. 48; *see also* ECF No. 33 at p. 22). As to the objective prong of the analysis, Plaintiff alleges that he has been diagnosed with chronic Hepatis C, "a serious liver disease, which, if left untreated, can be terminal."  (ECF No. 48 at ¶ 5.)  For the purposes of a motion to dismiss, this is sufficient to satisfy the objective prong of the deliberate intent analysis. *See e.g., Taylor v. Wexford Health Services*, No. 5:17-cv-00173, 2018 WL 4761621, at *2 (N.D.W. Va. July 30, 2018) (noting that the "Centers for Disease Control and Prevention [ ] has recognized that chronic Hepatis C is a serious medical condition which can result in long term health problems") (citing *Cunningham v. Sessions*, No. 9:16-cv-1292, 2017 WL 2377838, at *1 (D.S.C. May 31, 2017)).

With respect to the second prong, Plaintiff alleges Hissom "is responsible for and oversees the planning, implementation and evaluation of medical policies and practices throughout jails and prisons in the state" and is "directly responsible for Hepatitis C treatment policy" that Plaintiff alleges violates the Eighth Amendment.  (ECF No. 48 at ¶ 4.)  Plaintiff alleges Defendants, including Hissom, are "fully aware that the treatment policy does not meet current treatment

guidelines or standards" and notes that Hissom is "being sued in her individual capacity for her direct knowledge, directive and implementation of the policy and practice of which plaintiff now complains."[5]  *Id.*  Plaintiff further alleges that he "has filed grievances and appealed those grievances to the Commissioner of the WVDOC" and that WVDOC responded by stating "it must follow the directions of the medical provider Wexford."  (ECF No. 48 at ¶ 7; ECF No. 72-1 at ¶ 7.)  Plaintiff contends that these allegations are sufficient to state a deliberate indifference claim against, the Director of WVDOC.  (ECF No. 48 at ¶¶ 15-21; ECF No. 72-1 at ¶¶ 16-21.)

Based on a liberal reading of these allegations, Hissom was arguably put on sufficient notice through Plaintiff's alleged grievances to the WVDOC (and appeals of those grievances) that failure to maintain a policy that permits treatment of Plaintiff's Hepatitis C with DAA drug treatment could be found to be in violation of the Eighth Amendment. (*See* ECF No. 48 at ¶ 7; *see also* ECF No. 72-1 at ¶ 7.)  However, simply noting that there may have been a violation of a constitutional right does not end the Court's qualified immunity analysis. Next, the Court turns to whether the right that Hissom allegedly violated was clearly established at the time of the alleged allegation.

### b.  Clearly Established

When determining whether the law was clearly established at the time of the claimed violation, the Court "ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose."

---

[5] As Plaintiff is suing Hissom in her personal capacity in his claim for deliberate indifference, Hissom can appropriately assert qualified immunity as an affirmative defense.  *See Ridpath v. Board of Governors Marshall University*, 447 F.3d 292, 306-07 (2006) ("Qualified immunity may be invoked by a government official sued in his personal, or individual, capacity.")

*Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).  Thus, "in gray areas, where the law is unsettled or murky, qualified immunity afford protection to a government office who takes an action that is not clearly forbidden—even if the action is later deemed wrongful." *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014).  The question here is whether Hissom acted reasonably in the "particular circumstances" by refusing to enact policies or avenues of treatment that permit Plaintiff's Hepatitis C to be treated with DAA drugs.

This Court examined these circumstances in its earlier order in this case and found that another defendant, Moore, is entitled to qualified immunity due to the absence of a "clearly established" right of Plaintiff to be treated with DAA drugs. (ECF No. 33 at pp. 8-10.)  The Court stands by its analysis and reasoning in its prior order and determines here that, in light of medical developments and the lack of legal authority establishing the unlawfulness of Hissom's course of action in this case, Hissom would not have been on notice of a "clearly established" right of Plaintiff to be treated by DAA drugs.  Accordingly, Hissom—like Moore—is entitled to qualified immunity as to Plaintiff's deliberate intent claim.  The Court **GRANTS** Hissom's motion to the extent she seeks qualified immunity with respect to the deliberate indifference claim.

   2. *Intentional Infliction of Emotional Distress*[6]

Hissom argues that Plaintiff's Second Amended Complaint fails to state a claim of intentional infliction of emotional distress.  (ECF Nos. 64, 65, 75.)  Plaintiff does not rebut this argument in his response to Hissom's Motion to Dismiss.  (ECF No. 71.)  Moreover, the allegations of intentional infliction of emotional distress do not specifically name Hissom or note Hissom's

---

[6] The allegations of intentional infliction of emotional distress are not changed or altered from the Second Amended Complaint to the Third Amended Complaint and, thus, the analysis applies to both the Second and Third Amended Complaints.

direct involvement with the action (or inaction) alleged in this claim.  (ECF No. 48 at ¶¶ 22-28.)  Thus, taken as a whole, the Second Amended Complaint fails to sufficiently articulate factual allegations that nudge Plaintiff's intentional infliction of emotional harm claim against Hissom from conceivable to plausible.  *See Twombly*, 550 U.S. at 555, 570.

The Court **FINDS** that Plaintiff fails to state an intentional infliction of emotional distress against Hissom and therefore **DISMISSES** the same.  Accordingly, the Court **GRANTS** Hissom's Motion to Dismiss.

## IV.   Conclusion

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion for Leave to Amend Complaint, (ECF No. 72), and the Court **DIRECTS** the Clerk to docket ECF No. 72-1, as Plaintiff's Third Amended Complaint.  As to Wexford and Moore's Motion to Dismiss, (ECF No. 49), the Court **GRANTS** the motion as to the claims for intentional infliction of emotional distress and **DENIES** the motion as to the deliberate indifference claim. The Court **DENIES** Wexford and Moore's Motion to Dismiss as to injunctive relief as **MOOT** because Plaintiff clarified in his response that, at that time, he was only seeking injunctive relief from Hissom.  However, the Court now clarifies that—due to its grant of the Motion for Leave to Amend that was filed after Wexford and Moore's Motion to Dismiss—there is currently still a claim for injunctive relief stated against Wexford.

Lastly, the Court **GRANTS** Hissom's Motion to Dismiss, (ECF No. 64), as to the claims for deliberate intent and intentional infliction of emotional distress, and the Court **DENIES** Hissom's Motion to Dismiss as to any injunctive relief as **MOOT** as Plaintiff's Third Amended

Complaint clarifies he is seeking injunctive relief against Hissom in her official capacity—not her individual capacity.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 7, 2021

_____

THOMAS E. JOHNSTON, CHIEF JUDGE

23