IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MICHAEL INSCO,

        Plaintiff,

v.                                     CIVIL ACTION NO.  2:19-cv-00612

WEXFORD HEALTH SOURCES, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are two motions: (1) Defendant Pam Moore and Wexford Health Sources, Inc.'s Motion for Summary Judgment, (ECF No. 92) ("Moore and Wexford's Motion for Summary Judgment"); and (2) Defendant Debbie Hissom's Motion for Summary Judgment, (ECF No. 94) ("Hissom's Motion for Summary Judgment").[1]  For the reasons stated more fully within, the Court **GRANTS IN PART** Moore and Wexford's Motion for Summary Judgment, (ECF No. 92), and **GRANTS IN PART** Hissom's Motion for Summary Judgment, (ECF No. 94).  The remainder of both motions are **DENIED AS MOOT** for the reasons set forth below.

*I. BACKGROUND*

    *A.  Factual Background and Allegations*

This case stems from allegations related to the sufficiency of medical and drug treatment provided to Plaintiff Michael Insco ("Plaintiff") by Defendants for Plaintiff's Hepatitis C treatment.  Generally, Plaintiff alleges that, at various West Virginia Correctional facilities,

---

[1] Additionally, pending is Moore and Wexford's Motion to File Various Exhibits Attached to Defendants Pam Moore and Wexford Health Sources, Inc.'s Motion for Summary Judgment Under Seal.  (ECF No. 90.)  Plaintiff does not oppose this motion.  Finding it appropriate to do so, the Court **GRANTS** the motion.

Wexford Health Sources, Inc. ("Wexford") and its employees "have been deliberately indifferent to the serious medical conditions of [Plaintiff] by repeatedly refusing to provide [him] treatment for [his] hepatitis C." (ECF No. 72-1 at 1.)  Plaintiff contends that the Wexford policy that contains the treatment regimen for inmates with Hepatitis C rises to the level of deliberate indifference to his serious medical condition. (*Id.* at pp. 1-2.)  Plaintiff further claims that the standard of care for the successful treatment of individuals with Hepatitis C involves medications known as Direct Acting Antiviral drugs ("DAAs") and that Defendants' refusal to provide DAAs to Plaintiff amounts to a violation of the Eighth Amendment. (*See id.* at ¶ 6.)

More specifically, Plaintiff's Third Amended Complaint asserts claims against three named defendants and John/Jane Does. (ECF No. 72-1.)  The named defendants are Wexford, "a company that provides health services to inmates at various West Virginia Correctional facilities[;]" Pam Moore ("Moore"), "a nurse practitioner employed by Wexford who has personally addressed plaintiff's request for antiviral drug treatment[;]" and Debbie Hissom ("Hissom"), "who is employed by the [West Virginia Division of Corrections and Rehabilitation] as the Director of Medical Services." (*Id.* at ¶¶ 2–4.)  The Third Amended Complaint contains two causes of action: (1) deliberate indifference under 42 U.S.C. § 1983 in violation of the Eighth Amendment and (2) intentional/reckless infliction of emotional distress under West Virginia state law. (*Id.* at 6–8.)  The Third Amended Complaint also seeks injunctive relief (1) that directs Hissom "to alter the policy that results in contracted medical providers from treating plaintiff or referring plaintiff for treatment of his hepatitis C;" (2) that directs "providers to make medical referrals for treatment of Hepatitis C on medical grounds and, not financial grounds;" and (3) that directs "providers to develop and implement policies to preclude such violations from occurring in the future." (*Id.* at 9.)

*B. Procedural History*

On August 21, 2019, Plaintiff initiated this action against Defendants Wexford, Moore, and unidentified John/Jane Doe Wexford employees. (ECF No. 1.) On December 2, 2019, Plaintiff filed an Amended Complaint. (ECF No. 8.) Then, on December 21, 2020, the Court granted Plaintiff's Motion for Leave to Amend Complaint, (ECF No. 47), and the Second Amended Complaint was filed on December 21, 2020, which added Hissom as a defendant to the matter. (ECF No. 48).

Following the Second Amended Complaint, Moore and Wexford filed a Motion to Dismiss on January 4, 2021. (ECF No. 49). In his response, Plaintiff clarified that (1) Count I for deliberate indifference was being brought only against Wexford and Hissom and (2) the request for injunctive relief was brought against Hissom in her official capacity. (ECF No. 56.) Hissom filed her own Motion to Dismiss on April 9, 2021. (ECF No. 64.) On April 23, 2021, Plaintiff filed another Motion to Amend for Leave to Amend Complaint. (ECF No. 72.)

On September 7, 2021, the Court entered an order, (ECF No. 118), granting Plaintiff's Motion for Leave to Amend Complaint, (ECF No. 72), and the Third Amended Complaint was filed on April 23, 2021, (ECF No. 72-1). The Court also denied Wexford and Moore's Motion to Dismiss as to the deliberate indifference claim asserted against Wexford, (ECF No. 49), granted Hissom's Motion to Dismiss as to the deliberate indifference claim against her, (ECF No. 64), and granted both motions to dismiss the intentional infliction of emotional distress claim asserted against all defendants, (ECF No. 49, 64). Finally, the Court denied as moot Wexford and Moore' motion regarding Plaintiff's claim for injunctive relief. (ECF No. 49). However, the Court noted

that Plaintiff still had an active claim for injunctive relief in the Third Amended Complaint.  (*See* ECF No. 118 at 22.)

Before the Court entered that order, Moore and Wexford filed a Motion for Summary Judgment on June 21, 2021. (ECF No. 92.)  Hissom also filed a Motion for Summary Judgment on June 21, 2021. (ECF No. 94.)  Plaintiff responded to both motions on July 13, 2021.  (ECF Nos. 98, 99.)  On July 20, 2021, Moore and Wexford filed their Reply.  (ECF No. 100.)  Hissom also filed her Reply on July 20, 2021.  (ECF No. 101).  With the briefing complete, these motions are ripe for adjudication. Each of these pending motions will be discussed in turn below.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. In pertinent part, this rule states that a court should grant summary judgment if "there is no genuine issue as to any material fact."  Summary judgment should not be granted, however, if there are factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  When evaluating these factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . .." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  This burden may be met by use of depositions and other discovery materials.  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th

Cir. 1984).  Once the moving party meets its burden, the burden shifts to the non-moving party to

"make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  Should a party fail to make a sufficient showing on one element of that party's

case, the failure of proof "necessarily renders all other facts immaterial."  *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon

mere allegations or denials of his pleading, but must set forth specific facts showing that there is a

genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 256.  "The mere existence of a scintilla of

evidence" in support of the nonmoving party is not enough to withstand summary judgment; the

judge must ask whether "the jury could reasonably find for the plaintiff."  *Id.* at 252.

### III.    DISCUSSION

As an initial matter, the Court notes that Moore, Wexford, and Hissom have moved this

Court to grant summary judgment on Count II for intentional infliction of emotional distress.  (*See*

ECF No. 72-1; *see also* ECF No. 48.)  However, Count II has been dismissed against all defendants

in a previous order.[2]  (ECF No. 118.)  Thus, a claim of deliberate indifference against Wexford is

only the remaining cause of action, accompanied by Plaintiff's request for injunctive relief against

Wexford and Hissom.  This Court will begin its analysis with Moore and Wexford's Motion for

Summary Judgment.  (ECF No. 92.)  Then, the Court will address Hissom's Motion for Summary

Judgment regarding Plaintiff's requested injunctive relief.  (ECF No. 94.)

### A.  *Moore and Wexford's Motion for Summary Judgment*

---

[2] As this Court explained, given the limited nature of the revisions from the Second Amended Complaint to the Third Amended Complaint, the Court's analysis and findings related to Defendants' previous motions to dismiss are applicable to the Third Amended Complaint.  (ECF No. 118 at 9.)  Therefore, to the extent necessary, the Court **DENIES AS MOOT** all arguments related to Count II for intentional infliction of emotional distress.

Moore and Wexford's Motion sought summary judgment on Plaintiff's claim for deliberate indifference against Wexford. (ECF No. 93.) Wexford contends it is entitled to summary judgment because the medical care rendered to Plaintiff as it pertains to his Hepatis C did not fall below the standard of care at the time it was given. (ECF No. 93 at 11.) Conversely, Plaintiff alleges that Wexford provided Plaintiff with "no interventional care" for his Hepatitis C. (ECF No. 98 at 10.)

An Eighth Amendment claim based on deliberate indifference to serious medical needs has two prongs, one objective and one subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013); *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("[D]eliberate indifference, . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). "Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). Knowledge of a substantial risk of danger may be inferred "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842–43; *see also Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] did know of it because he could not have failed to know of it.").

The subjective prong goes to culpability, and in "prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beron*, 896 F.2d 848, 851 (4th Cir. 1990) (overruled on other grounds). "[M]ere negligence or malpractice does not violate the Eighth Amendment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather,

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.

*Id.* (internal citations omitted). Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are generally not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As the Fourth Circuit explained, an inmate is not entitled to unqualified access to health care, and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). Ultimately, demonstrating deliberate indifference to a serious medical need is a high bar. *Redden v. Ballard*, No. 2:17-cv-01549, 2018 WL 4327288, at *6 (S.D.W. Va. July 17, 2018).

In the present case, Plaintiff's allegations for deliberate indifference are based on Defendants' alleged failures to sufficiently treat Plaintiff's Hepatitis C by refusing to provide Plaintiff with DAA drug treatment. (ECF No. 72-1; *see also* ECF Nos. 48, 33.) As to the objective prong of the analysis, Plaintiff alleges that he has been diagnosed with chronic Hepatis C, "a serious liver disease, which, if left untreated, can be terminal." (ECF No. 72-1 at ¶ 5.) Wexford and Moore do not dispute that Plaintiff's Hepatitis C qualifies as a serious medical condition. (*See* ECF No. 93; *see also* ECF No. 100 at 1.) For the purposes of a motion for summary judgment, this is sufficient to satisfy the objective prong of the deliberate intent analysis. *See, e.g., Gordon*

*v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) ("The defendants do not dispute that [Plaintiff's] HCV qualifies as a serious medical condition and thus satisfies the objective component of his deliberate indifference claims.").

With respect to the second prong, Plaintiff alleges that Wexford was aware of his serious medical need yet "intentionally refused to treat plaintiff with drugs that are known to provide a cure." (ECF No. 98 at 10.) Wexford argues that it is entitled to summary judgment because the medical care rendered to Plaintiff as it pertains to his Hepatis C did not fall below the standard of care at the time it was given. (ECF No. 93 at 11.) Specifically, Wexford contends that the decision to monitor Plaintiff's Hepatitis C instead of administering DAA drugs was in accordance with the Federal Bureau of Prison ("FBOP") Clinical Guidance and the American Association for the Study of Liver Diseases ("AASLD") Guidelines, both of which recommended a prioritization system. (ECF No. 93 at 12.) In response, Plaintiff asserts that "DAA drugs are and were the standard of care for his condition" during incarceration. (ECF No. 98 at 10.)

To that extent, Dr. Dina Paul, the Hepatitis C specialist for Wexford, testified that the August 2018 FBOP Clinical Guidance and the AASLD Guidelines were the community standard of care as it pertained to treatment of Hepatitis C during Plaintiff's incarceration. (*See* ECF No. 98-3 at 92:2–6 (Paul Deposition).) She also testified that, in her opinion, the FBOP Guidance "applies more" to Plaintiff's case because it is specifically for federal prisons. (*See id.*) The parties do not dispute that the August 2018 FBOP Clinical Guidance is the applicable standard of care during Plaintiff's incarceration. (ECF No. 98 at 4; ECF No. 100 at 3.) Rather, Plaintiff argues that the August 2018 FBOP Clinical Guidance recommends that all chronic Hepatitis C inmates be treated with DAA drugs. (ECF No. 98 at 4.) However, the 2018 FBOP Clinical Guidance provides that all sentenced inmates are *eligible for consideration* of treatment with DAA drugs.

(August 2018 FBOP Guidance at 8; *see also* Paul Deposition at 92–93.)  Further, as Plaintiff notes,

(ECF No. 98 at 4), the August 2018 FBOP Clinical Guidance allow for prioritization of persons

with more advanced or serious Hepatitis C cases.  (August 2018 FBOP Guidance at 8.)  Indeed,

Dr. Paul testified that both the August 2018 FBOP Clinical Guidance and the AASLD Guidelines

recommend that patients with Hepatitis C be prioritized for treatment based on how progressive

their illness was at the time.  (Paul Deposition at 88:4–14).)  Thus, prioritization of—not unfettered

access to—DAA drug treatment was the standard of care during Plaintiff's incarceration.

Yet, Plaintiff also asserts that, despite the prioritization policy, Wexford did not refer

inmates for treatment unless their APRI[3] score was more than 2.0.  (ECF No. 98 at 6.)  As such,

Plaintiff alleges that Wexford's policy of "not treating chronic Hepatitis C inmates until they reach

a certain level of sickness" amounts to deliberate indifference.  (*Id.* at 4.)  However, in addition to

the prioritization system, the 2018 FBOP Clinical Guidance also has "other criteria" to consider

when determining whether a patient receives DAA drugs—including whether the patient has the

"ability to adhere to a rigorous treatment regimen and to abstain from high-risk activities."  (August

2018 FBOP Guidance at 9.) To that extent, Dr. Salomon reported that Plaintiff's individual "risky

behavior," such as engaging in physical altercations and getting jailhouse tattoos, "suggest a lower

likelihood of completing [an] entire course of DAA therapy" and ultimately contributed to his

initial exclusion from a DAA drug regimen.  (ECF No. 92-1 at 2 (Salomon Report).)

As a result of not initially qualifying for a DAA drug regimen, Plaintiff next argues that

Wexford provided him with "no interventional care" for his Hepatitis C because he received "no

drug or treatment."  (ECF No. 98 at 10) (arguing that monitoring is not treatment).  Still, the 2018

---

[3] APRI, an acronym for aspartate aminotransferase to platelet ratio index, is a way to measure the degree of Hepatitis C induced liver damage by blood test. A higher APRI score signifies a greater likelihood that fibrosis or severe cirrhosis exists. An APRI score less than or equal to 0.5 are unlikely to have either fibrosis or cirrhosis, whereas an APRI score greater than or equal to 2.0 is more likely than not to have cirrhosis. (Salomon Report at 3.)

FBOP Clinical Guidance recommends periodic monitoring for those with chronic Hepatitis C infection who are not yet being treated with DAA drugs. (August 2018 FBOP Guidance at 15, 23.) And, ultimately, a mere disagreement regarding the recommended course of treatment is insufficient to support a deliberate indifference claim. *See Bowring*, 551 F.2d at 47.

Nevertheless, a significant delay in the treatment of a serious medical condition may, in the proper circumstances, indicate an Eighth Amendment violation. *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (citing *Estelle,* 429 U.S. at 104–05, 97 S.Ct. 285). However, an Eighth Amendment violation only occurs "if the delay results in some substantial harm to the patient." *Hamidullah*, 281 F. App'x at 166. That is not the case here, as Plaintiff has not presented evidence that the delay in administering DAA drugs to him resulted in substantial harm. Plaintiff's lab results were unchanged and stable from December 2018 to January 2020 and improved from January 2020 to September 2020. (ECF No. 92-6.) Additionally, Dr. Paul testified that there is no indication that Plaintiff had any increased risk of substantial harm or suffered permanent injury or damage from December 2018 to April 2020. (Paul Deposition at 88-89.) Although Plaintiff has testified to experiencing abdominal pain, fatigue, and emotional distress, (ECF No. 98, ¶ 5; ECF No. 98-6 at 30–31), Dr. Salomon reported that these symptoms are unrelated to his Hepatitis C diagnosis. (Salomon Report at 10.) Critically, Plaintiff has not presented any evidence to rebut these scientific findings. (See ECF No. 98.) Thus, Plaintiff cannot establish that he has suffered substantial harm due to any alleged delay in treatment.

At bottom, Dr. Paul testified that Plaintiff's treatment was in accordance with the 2018 FBOP Clinical Guidance. (Paul Deposition at 88:8–14.) Similarly, Dr. Salomon reported that Wexford did not breach the standard of care in treating Plaintiff's Hepatitis C. (Salomon Report at 11.) Notably, Plaintiff has not proffered an expert opinion to the contrary. (*See* ECF No. 98.)

10

Therefore, although Plaintiff's Hepatitis C is a serious medical condition, meeting the objective prong of the deliberate indifference analysis, the subjective prong has not been satisfied. Accordingly, Moore and Wexford's Motion for Summary Judgment as to the deliberate indifference claim is **GRANTED**.

### B.  Hissom's Motion for Summary Judgment

Hissom has moved this Court to grant summary judgment on Count III (injunctive relief) of Plaintiff's Third Amended Complaint. [4]  (ECF No. 94.)  Hissom asserts that (1) Plaintiff has not established that she is the appropriate person to establish policies regarding the clinical treatment of inmates, and (2) Plaintiff's claim for injunctive relief is moot because Wexford is now following the March 2021 FBOP Clinical Guidance regarding the treatment of patients with Hepatitis C.[5] (*Id.*)  Similarly, Moore and Wexford have moved for summary judgment on Plaintiff's claim for injunctive relief, arguing that it is moot because Plaintiff started receiving a DAA drug regimen on September 9, 2021.  (ECF No. 128.)

The Court agrees that Plaintiff's claim for injunctive relief is moot, although for a different reason than Defendants argue.  Importantly, a request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the substantive counts.  *Pinnacle Min. Co., LLC v. Bluestone Coal Corp.*, 624 F. Supp. 2d 530, 539 (S.D.W. Va. 2009) (internal quotations and citations omitted); *City of Charleston, W. Virginia v. Joint Comm'n*, 473 F. Supp. 3d 596, 632 (S.D.W. Va. 2020) (explaining "insofar as

---

[4] Hissom also moved the Court to grant summary judgment in her favor on Count I (deliberate indifference). (ECF No. 94.)  However, the Court has already dismissed this claim against Hissom in a previous order. (See ECF No. 118.) Therefore, to the extent necessary, the Court **DENIES AS MOOT** Defendant Hissom's Motion for Summary Judgment as it relates to Plaintiff's claim for deliberate indifference.

[5] In addition, Hissom argues that Plaintiff's claim for injunctive relief fails as a matter of law because Plaintiff has sued her in her individual capacity. (ECF No. 94 at 2).  However, Plaintiff's Third Amended Complaint, which was filed after Hissom's Motion for Summary Judgment, sues Hissom in her official capacity. (ECF No. 72-1; *see also* ECF No. 118 at 15.) Therefore, the Court **DENIES AS MOOT** Defendant Hissom's motion to the extent that it asserts that Plaintiff has sued her in her individual capacity.

Count III seeks injunctive relief, an injunction is merely a remedy flowing from the underlying substantive claims rather than an independent cause of action itself").

In this case, all substantive claims have been dismissed and only Count III (injunctive relief) remains.  Thus, without a substantive claim against any defendants, Plaintiff's claim for injunctive relief is moot.  Accordingly, Hissom's Motion for Summary Judgment is **GRANTED** as it relates to Plaintiff's claim for injunctive relief.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Moore and Wexford's Motion for Summary Judgment (ECF No. 93), on Plaintiff's claim for deliberate indifference. The Court **GRANTS IN PART** Hissom's Motion for Summary Judgment, (ECF No. 94), on Plaintiff's claim for injunctive relief.  Further, the Court therefore **DISMISSES** Plaintiff's claim of deliberate indifference against Wexford and request for injunctive relief against Wexford and Hissom. Finally, because the remaining claims asserted by Plaintiff have been dismissed, the Court **DENIES AS MOOT** the remainder of the motions and **DISMISSES** this action **WITH PREJUDICE**.  The Clerk is **DIRECTED** to remove this action from the Court's active docket.


**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 13, 2021

13

_____
THOMAS E. JOHNSTON, CHIEF JUDGE